UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| *ex rel.* MARIE MORALES, and | : | |
| MARIE MORALES, individually, | : | CIVIL NO. 3:08CV1352(RNC) |
| | : | |
| *Plaintiffs,* | : | |
| v. | : | |
| | : | |
| LUIS COLON, | : | OCTOBER 28, 2011 |
| | : | |
| *Defendant.* | : | |

**GOVERNMENT'S STATEMENT OF INTEREST**

On August 12, 2011, the United States filed an Application for Permission to file a Statement of Interest ("Application") in this *qui tam* matter that is scheduled for a final pretrial conference on October 31, 2011 and for jury selection on November 8, 2011. Docket ## 57, 60. The Court granted the Application on October 20, 2011 and ordered that the government's Statement of Interest be filed before close of business on October 28, 2011. *Id.* # 61. In its Application, the United States indicated that the Statement of Interest would be limited to addressing the portions of the four motions in limine filed on July 28, 2011 by the defendant, Luis Colon, pertaining to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, allegations in the relator's Complaint.[1] Application at 1; *see also* Docket ## 50, 51, 52, 53.

The government also indicated in its Application that if permitted leave to file the Statement of Interest, the United States would not address the merits of the underlying action, but would instead limit its filing, in an effort to provide assistance to the Court, to commentary about

---

[1] The United States' legal interest in this matter extends only to Count 1 of the Complaint, *see* Docket # 3, the sole cause of action in the pleading alleging violations of the FCA.

construction and interpretation of the FCA. Application at 2. Because the FCA is the government's "primary litigative tool for the recovery of losses sustained as the result of fraud against the government," *Avco Corp. v. U.S. Dep't of Justice,* 884 F.2d 621, 622 (D.C. Cir. 1989), the United States has a strong interest in ensuring that the FCA is properly interpreted, even in cases in which it is not a party.[2] *See also* 28 U.S.C. § 517 (authorizing the Department of Justice to attend to the interests of the United States in suits pending in federal courts).

The United States respectfully submits this Statement of Interest in response to the defendant's pending motions in limine.[3]

---

[2] Although the United States filed a notice of election to decline intervention in this action, *see* Docket # 15, the relator, Marie Morales, continued to maintain the action in the name of the United States pursuant to 31 U.S.C § 3730(c)(3). Though no longer a party to this suit, the United States remains the real party in interest in a declined *qui tam* suit. *United States ex rel. Eisenstein v. City of New York,* 129 S. Ct. 2230, 2235 (2009); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1154 (2d Cir. 1993). For example, in a declined *qui tam* suit in which a relator successfully obtains a monetary recovery, the United States receives from 70 to 75% of the recovered sum. 31 U.S.C. § 3730(d)(2). In addition, the United States retains certain other statutory rights in a declined *qui tam* suit, including the right to intervene in the action at a later date upon a showing of good cause. *Id.* § 3730(c)(3); *see also id.* § 3730(b)(1) (the suit "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting"); *id.* § 3730(c)(3) (United States entitled to service of all pleadings and submissions filed in a declined *qui tam* action).

[3] In his memorandum in support of his four motions in limine, the defendant includes an "Overview" section in which he cites a Second Circuit case for the proposition that a claim is actionable under the FCA only if it is "'aimed at extracting money the government otherwise would not have paid.'" Defendant's Memorandum of Law in Support of Motions in Limine at 2 (quoting *United States ex rel. Mikes v. Straus,* 274 F.3d 687, 696 (2d Cir. 2001)). The defendant's undeveloped assertion is irrelevant to the four motions in limine under consideration, and the government has therefore not responded to the assertion in its Statement of Interest. However, if the Court were to wish further briefing on the assertion, the government would of course oblige.

**Defendant's First Motion in Limine**

The defendant contends in his first motion in limine ("First Motion") that the relator, Marie Morales, allegedly failed to demand a jury trial in a timely manner. Defendant's Memorandum of Law in Support of Motions in Limine ("Defendant's Memorandum")(Docket # 53-1) at 3. The relator responds that she has the right to a jury trial under the Seventh Amendment to the Constitution as to her FCA cause of action. Plaintiff's Memorandum in Opposition to Defendant's First, Second, Third and Fourth Motions in Limine (Relator's Opposition Memorandum")(Docket # 58) at 1-2. The defendant responds that he is not challenging the relator's "*legal entitlement* to a trial by jury," but the relator's "failure to have demanded one." Defendant's Reply to Plaintiff's Opposition to Defendant's Motions in Limine First, Second, Third and Fourth ("Defendant's Reply Memorandum")(Docket # 59) at 1-2 (emphasis in original).

The United States agrees with the relator's argument that there is a constitutional right to a jury trial for FCA causes of action. In *Curtis v. Loether,* 415 U.S. 189, 193-94 (1974), for example, the Supreme Court stated, in the context of a case alleging violations of the fair housing provisions of the Civil Rights Act of 1968, that "[w]hatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." There can be no dispute that the FCA creates legal rights and remedies and that its statutory provisions are enforceable in the ordinary courts of law. However, given that the defendant has conceded such a right and has limited his challenge to whether the relator has complied with the jury demand requirements of Fed. R. Civ. P. 38(b), defendant's First

Motion does not raise any issue of FCA construction or interpretation, and the United States therefore expresses no opinion about the substance of the defendant's First Motion.

**Defendant's Second and Third Motions in Limine**

In his second motion in limine ("Second Motion"), the defendant seeks to preclude testimony at trial by Robert Cappelletti, whom the relator has listed as a witness in the parties' Joint Trial Memorandum (Docket # 54) at 6. According to the relator, Cappelletti is the Executive Director of the Housing Authority of the City of Meriden, and he will testify "about the nature of the Section 8 program, its effects on homelessness and [the] requirements of the program." The defendant contends that the proposed testimony of Robert Cappellitti "has neither relevance to the case nor to any element of any issue that might be presented." Defendant's Memorandum at 4. The relator argues that the proposed testimony meets the broad definition of relevance embodied in Fed. R. Evid. 401 and that Capelletti will provide testimony specifically related to "essential facts" involving "[t]he nature of the Section 8 program, the purposes of the Section 8 program, [and] its requirements and obligations on participating tenants and landlords." Relator's Opposition Memorandum at 2-3. The defendant counters that the nature of the proposed testimony set forth in Relator's Opposition Memorandum contradicts the description of the proposed testimony in the Joint Trial Memorandum and that "that state of affairs warrants and mandates preclusion." Defendants' Reply Memorandum at 2.

In his third motion in limine ("Third Motion"), the defendant seeks to preclude testimony by the individual listed in the Joint Trial Memorandum as the "Section 8 Coordinator" for the Housing Authority of the City of Bridgeport ("HACB"). As to the proposed testimony by the HACB's Section 8 Coordinator, the defendant argues that the relator has failed to disclose the

specific identity of this witness and that, in any event, the proposed testimony should be precluded for the same reasons that testimony by Robert Cappellitti should be precluded. Defendant's Memorandum at 5. The relator counters that the identity of the unnamed Section 8 Coordinator is "clearly discernible to the defendant" and that the witness's testimony about the HACB's Section 8 program and the specifics of the instant matter, including relevant documents created by the HACB in its ordinary course of business, can "be offered by any person with actual knowledge of the practices of the HACB." Relator's Opposition Memorandum at 3. The defendant again reiterates that the relator has failed to specifically name the HACB Section 8 Coordinator and that testimony by this witness must therefore be precluded. Defendant's Reply Memorandum at 3.

The interest of the United States as to the Second and Third Motions is limited to commenting that Section 8 fraud is actionable under the FCA and that the proposed Section 8 testimony of Robert Cappellitti and the unnamed Section 8 Coordinator would be relevant to proving such fraud. The purpose of the FCA is "to provide for restitution to the [G]overnment of money taken from it by fraud." *United States v. Hess*, 317 U.S. 537, 551 (1943). The statute is intended "to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). For FCA liability to attach, a claim for payment–i,e., "a call upon the government fisc," must be present. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999); *see also United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.,* 186 F. Supp. 2d 458, 464 (S.D.N.Y. 2002)(no FCA liability because relator's claims of fraud were not linked to specific claims for payment by the Government).

The FCA contains a broad definition of "claim," which includes

> any request or demand which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or the property which is requested or demanded.

31 U.S.C. § 3729(c).[4] In the instant matter, there are multiple false claims, if proven, that are cognizable under the FCA. For each of the months the defendant purportedly demanded and accepted payment from the relator in excess of the negotiated rent approved by the local housing authority, *see* Complaint ¶¶ 29-30, the defendant allegedly caused to be presented false claims for payment or approval by the United States through the Department of Housing and Urban Development's Section 8 Housing Choice Voucher Program. *Id.* ¶ 35-43. As the relator correctly states in her memorandum in opposition to defendant's motions in limine, *see* Relator's Opposition Memorandum at 2, at least three federal courts have found that the collection of rent in excess of the amount authorized in the Section 8 Housing Assistance Payment contract between a landlord and a local housing authority is actionable under the FCA. *See United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Or. 2007)(rent amounts collected beyond amount allowed by federally-funded program qualifies as fraud under FCA); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 280-81 (D. Conn. 2007)(Underhill, J.)(court made FCA damages assessment in context of suit involving Section 8 excess rent fraud); *United States ex rel. Smith v. Gilbert Realty Co., Inc.,* 840

---

[4] The FCA was amended by the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. No. 111-21 (May 20, 2009). The definition of "claim" in the statute was amended, but the amended definition applies only to claims submitted after FERA's date of enactment. The instant matter was already pending in this Court at the time FERA was enacted.

F. Supp. 71, 72 (E.D. Mich. 1993)(in ruling on damages assessment, court reiterated that FCA violated by landlord's endorsement of additional rent checks unallowed by contract stating that endorsement constitutes certification of non-receipt of excess rent).

The relator's FCA cause of action based on alleged Section 8 fraud is cognizable, and the Section 8 testimony challenged by the defendant in his Second and Third Motions would be relevant to proving such fraud.

## Defendant's Fourth Motion in Limine

In his fourth motion in limine ("Fourth Motion"), the defendant seeks to preclude *in toto* the FCA cause of action alleged by the relator in the first count of her three-count pleading. According to the defendant, the Court lacks subject matter jurisdiction over the FCA cause of action because (1) the relator has not identified any witnesses whose testimony addresses the "public disclosure bar" jurisdictional requirement of the statute, and (2) the relator has not alleged or established that she is an "original source" under the public disclosure bar section of the statute. Defendant's Memorandum at 6-7. The relator responds to this challenge in two respects. First, the relator argues that lack of subject matter jurisdiction should have been pleaded by the defendant as an affirmative defense. Relator's Opposition Memorandum at 3-4. Second, the relator contends that the defendant has not provided (1) any facts establishing that the defendant's alleged FCA violations "were based on any public disclosure" of such violation, nor (2) any legal authority that requires a *qui tam* relator to allege that the underlying allegations of FCA violations "were not from public disclosure." *Id.* at 4. The defendant counters that a relator must "allege and prove" that he or she "is the original source of the information upon which the complaint is based." Defendant's Reply Memorandum at 3-4.

The United States respectfully contends that the defendant's public disclosure bar argument is misplaced in the instant matter. Section 3730(e)(4) states in full:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, 'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4).[5] The relator's complaint is replete with allegations that her FCA cause of action is based upon personal, first-hand knowledge of the alleged fraud in this matter. The relator alleges, for example, that she was a tenant of the defendant from April 2004 to March of 2008 at premises in Bridgeport that were owned and leased by the defendant to her. Complaint, ¶¶ 5, 7. The relator further alleges that she was a recipient of Section 8 housing assistance administered by the HACB, and that on or about April 1, 2004, the relator and the defendant "entered into and executed a [HACB] written Assisted Lease Agreement for the use of the premises." *Id.* ¶¶ 21-22. The relator

---

[5] Section 3730(e)(4) of the FCA was amended in 2010 by the Patient Protection and Affordable Care Act (PPACA), Pub.L. No. 111-148 (March 23, 2010). Among other changes to section 3730(e)(4), the PPACA amendments eliminated the jurisdictional nature of the public disclosure bar. The instant matter was filed on September 5, 2008. *See* Docket # 3. The Department of Justice takes the position, on the basis of *Graham County Soil & Water Conservation District v. United States ex rel. Wilson,* 130 S. Ct. 1396, 1400 n.1 (2010), that the PPACA amendments are not retroactive.

appended an executed copy of the lease as Exhibit A to her pleading. The relator also alleges that the defendant entered into a Housing Assistance Payment ("HAP") contract with the HACB on or about April 1, 2004, and she appended a copy of the HAP contract as Exhibit B to the complaint. *Id.* ¶ 23. The relator alleges that pursuant to the lease, the HAP contract, and federal regulations, the approved rent was subject to periodic adjustment, as were the respective shares of the rent paid by the relator and the HACB. *Id.* ¶¶ 25-26. The relator further alleges that the defendant unlawfully demanded additional rent payments in excess of the HACB-approved rent and that she made a total of 31 separate excess payments to the defendant totaling $5,608. *Id.* ¶¶ 29-30. The relator has attached to her pleading, as Exhibit D, copies of all of the receipts in her possession (i.e., 29 receipts) that allegedly support her claim of fraud actionable under the FCA. *Id.* ¶ 30.

The relator has adequately pled jurisdiction by stating a claim under the FCA. The public disclosure bar, although jurisdictional, is a removal of jurisdiction statute, so the *absence* of a public disclosure need not be affirmatively pled in a complaint. *See Rockwell Int'l Corp. v. United States,* 549 U.S. 457, 468 (2007)(referring to the public disclosure bar as a "jurisdiction-removing provision"). In *United States ex rel. Jamison v. McKesson Corp.,* 649 F.3d 322 (5th Cir. 2011), the Fifth Circuit recently commented on the "impossib[le]" burden relators would have if they were required to prove whether a public disclosure had not occurred. Such a

> rule would require the relator to prove a negative: that there are *no* public disclosures of allegations or transactions upon which his action is based. We do not construe our precedent to require such an impossibility. Nonetheless, once the opposing party has identified public documents that could plausibly contain allegations or transactions upon which the relator's action is based, the relator bears the burden of demonstrating that they do not.

*Id.* at 327 (emphasis in original); *see also United States ex rel. Doe v. John Doe Corp.,* 960 F.2d 318, 322 (2d Cir. 1992)(actual public disclosure of the *qui tam* allegations is "the bedrock of § 3730(e)(4)(A)'s jurisdictional bar"). The defendant has not identified any information that might trigger application of the public disclosure bar in this landlord/tenant dispute case, and the government is unaware of any publicly disclosed information. If the defendant is cognizant of any such information, then he should promptly bring it the Court and counsels' attention given the jurisdictional nature of information that falls within section 3730(e)(4).

On the basis of the present record in this matter, section 3730(e)(4) has no bearing on disposition of the case.

## Conclusion

The United States takes no position on the defendant's First Motion to the extent it is limited to whether there has been compliance with the jury demand requirements of the Federal Rules of Civil Procedure. The government limits its interest regarding defendant's Second and Third Motions to commenting that the FCA cause of action pleaded by the relator in her complaint is cognizable under the statute, and that the proposed Section 8 testimony of the challenged witnesses would be relevant to proving Section 8 fraud. As to the defendant's Fourth Motion, the United States respectfully disagrees with the defendant's assertion that the FCA's public disclosure bar divests the Court of subject matter jurisdiction in this case.

Respectfully submitted,

DAVID B. FEIN
UNITED STATES ATTORNEY

_____/s/_____
WILLIAM A. COLLIER (ct00986)
ASSISTANT U.S. ATTORNEY
450 Main Street, Room 328
Hartford, CT 06103
Tel: (860) 947-1101
Fax: (860) 240-3291
william.collier@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on October 28, 2011, a copy of the foregoing "Government's Statement of Interest" was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____/s/_____
WILLIAM A. COLLIER
ASSISTANT U.S. ATTORNEY